**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

MUSTAFA N. ALJAZAIRI,

Plaintiff,

v. Case No. 1:24-cv-01537-CMH-LRV

COLONEL PETER A. MELETIS, *et al*.,

Defendants.

**DEFENDANTS MELETIS' AND PRINCE WILLIAM-MANASSAS REGIONAL ADULT DETENTION CENTER'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Defendant Colonel Peter A. Meletis, in his official capacity as Superintendent of the Prince William-Manassas Regional Adult Detention Center ("Superintendent Meletis"), and the Prince William-Manassas Regional Adult Detention Center (the "ADC") (collectively, "Defendants"), by counsel, submit this opposition to the Emergency Motion for a Preliminary Injunction (the "Motion") filed by Plaintiff Mustafa N. Aljazairi ("Plaintiff"), on the grounds that the Motion fails to make the requisite clear showings of likely success on the merits, irreparable harm in the absence of preliminary injunctive relief, and that issuance of the preliminary injunction is in the public interest. Consequently, Plaintiff fails to satisfy the standard for issuance of such an extraordinary and drastic remedy. The Motion should be denied.

## INTRODUCTION

Plaintiff filed this lawsuit asserting eight claims under the Fourteenth Amendment against 40 defendants, including Superintendent Meletis and the ADC. In the Complaint, Plaintiff challenges the conditions of his confinement, alleging that: he has been subject to three assaults by correctional officers on May 24, 2023, April 17, 2024, and April 19, 2024, respectively; he has

been denied medical care; and he has been placed in the ADC's Disciplinary Detention Unit for "false violations."

Plaintiff moves this Court for "emergency preliminary relief" in the form of: (1) "an immediate transfer to another pre-trial holding facility or a transfer to monitored house arrest, due to the Defendants' use of excess force"; and (2) "transfer to an independent medical facility as well as the allowance of an independent medical examination by a physician not connected to any of the Defendants, who may assess and order the provision of medical treatment." Pl's Mot. for Preliminary Injunction ("Pl.'s Mot.") at 1.

The Court should deny the Motion. First, Plaintiff's request that this federal court usurp the role of the Prince William Circuit Court and order him to house arrest violates the *Younger* abstention doctrine. Second, the Motion, which was filed without any evidentiary support, does not make a clear showing that Plaintiff is likely to succeed on the merits of his claims at trial. As set forth in the exhibits attached hereto, Plaintiff's allegations of excessive force used by correctional officers, denial of medical treatment, and accusations of violations of ADC policy, are completely false. The three incidents that Plaintiff claims were incidents of excessive force were well-documented, investigated by the ADC, and determined to be unfounded by the ADC and numerous outside agencies. Third, the Motion does not satisfy the other legal criteria necessary to obtain a preliminary injunction.

The Motion itself, which does nothing more than offer conclusory statements—belied by evidence attached to his own Complaint—that Plaintiff has been assaulted and denied access to any medical treatment, does not come close to satisfying the high legal standard necessary to obtain this drastic and extraordinary relief.

## RELEVANT FACTS

### I. Plaintiff's Allegations in the Complaint.

Plaintiff is a pretrial detainee at the ADC awaiting trial set for December 2, 2024. Compl. ¶ 68. On April 7, 2023, Plaintiff was charged with two counts of manslaughter and malicious wounding in connection with the death of his girlfriend, Dorthy Anne Fontain and her five-year-old daughter. Compl. at Exs. 3, 4. According to the criminal complaint, Plaintiff intentionally drove his vehicle into oncoming traffic and collided, passenger side first, into a Chevy Suburban. *Id.* On October 4, 2023, Plaintiff was indicted on two counts of murder, attempted malicious wounding, and child abuse and neglect charges.

In the Complaint, Plaintiff alleges that correctional officers subjected him to cruel treatment, including three beatings occurring on May 24, 2023, April 17, 2024, and April 19, 2024. Compl. ¶¶ 69-102. Plaintiff further contends in his Motion that he has been denied medical care. *Id.* ¶¶ 88, 96, 112, 130.

### II. The May 24, 2023 Assault Allegations Have Been Determined Unfounded.

Lt. Jeffery Kepler, of the ADC Office of Professional Standards, has investigated Plaintiff's many claims of assault at the hands of correctional officers and found all of them to be without merit. On May 24, 2023, Plaintiff flooded his cell by causing running water in his sink to overflow. **Exhibit 1, Incident Reports dated May 24, 2023; Exhibit 2, PREA Allegation Report dated November 27, 2023**. Many officers responded to the Plaintiff's cell, including Master Jail Officers Thompson and Tipton. **Exhibit 1**; **Exhibit 3, ADC Surveillance Footage, at 25:21**. The correctional officers opened Plaintiff's cell door to remove Plaintiff from the cell. *Id.* Due to the floor being wet and Plaintiff's lack of cooperation, all three of them slipped and fell to the floor, resulting in all three becoming wet. **Exhibits 1, 2**. Correctional officers removed him from his cell

in handcuffs. **Exhibits 1, 3 at 26:55**. Plaintiff was provided new, dry clothing. **Exhibit 2**. No officer assaulted him or touched him inappropriately. **Exhibit 2**. Lt. Kepler determined Plaintiff's complaint under the Prison Rape Elimination Act ("PREA") to be unfounded. **Exhibit 2**.

On January 18, 2024, Plaintiff's brother lodged allegations during a meeting of the ADC Jail Board that Plaintiff was raped by correctional officers on May 24, 2023. **Exhibit 4, Prince William Police Department Police Report**. Prince William Police Department ("PWPD") Officer Scott Long was assigned to the case and asked to investigate the allegations. *Id*. Lt. Kepler cooperated in Officer Scott's investigation into the allegations by providing copies of his PREA report, and video footage of Plaintiff's pod. *Id.* Police Officer Long also spoke with Supervisory Special Agent Josh Huckel from the Federal Bureau of Investigation-Washington Field Office, because the FBI was contacted regarding similar allegations made by Plaintiff. *Id.* Special Agent Huckel stated that their investigation did not yield anything. The FBI found Plaintiff not to be credible due to Plaintiff's statements that contradicted his earlier accusations, and reports that were not corroborated by ADC security footage. *Id.* Police Officer Long similarly concluded that the allegations made to PWPD were "unfounded," reasoning "[t]here is no evidence to support the allegation made that [Plaintiff] was sexually assaulted and his own statements do not provide anything for me to investigate further." *Id.*

## III. The April 17, 2024 and April 19, 2024 Assault Allegations Have Been Determined Unfounded.

On April 17, 2024 at approximately 12:45 p.m., Plaintiff was disciplined by ADC for refusing to get off the phone and placing a window cover over his cell. **Exhibit 5, Incident Reports dated April 17, 2024**. When told that he had two minutes to hang up the phone call, he responded by yelling and threatening the correctional officers. *Id.* First Sergeant Gordon obtained the phone from the Plaintiff and entered Plaintiff's cell to retrieve the window cover. *Id.* During

this encounter, Plaintiff pushed towards First Sergeant Gordon, who placed his forearm across his chest with an open hand and pushed Plaintiff away from him. *Id.* Plaintiff was written up for a major infraction of unacceptable behavior for threatening ADC staff. *Id.*

On April 18, 2024 at approximately 3:45 p.m., Officer Canas attempted to provide Plaintiff a packet of aspirin through his tray slot but he refused because she opened the medication packet. **Exhibit 6, Incident Reports dated April 18, 2024**. When Officer Canas attempted to shut the Plaintiff's tray slot, Plaintiff began to repeatedly strike the tray slot with his fist to stop Officer Canas from closing it. *Id.* Plaintiff caused abrasions to his right hand from striking the metal slot. *Id.* Officer Canas notified Sgt. Gordon of the incident. *Id.* Nurse Comfort attempted to bandage his hand, but Plaintiff would only allow treatment to be rendered through the tray slot. *Id.*

On April 19, 2024 at approximately 8:05 a.m., correctional officers performed searches of Plaintiff's housing unit (D-Pod). **Exhibit 7, Incident Reports dated April 19, 2024**. When officers attempted to search Plaintiff's cell, Plaintiff ignored orders to stand up off his bunk and place his hands on the wall for the search. *Id.* Officer Nordike gave another order for Plaintiff to stand up off his bunk. *Id.* Plaintiff responded, "What are you gonna do if I don't," to which Officer Nordike responded, "We would help you to stand." *Id.* Officer Nordike assisted Plaintiff to stand up by placing his hand on his left wrist. *Id.* Plaintiff resisted despite multiple commands to comply. *Id.* Plaintiff was placed in handcuffs and positioned on his stomach on the floor of the cells so that the officers could perform the search of his cell. *Id.* Plaintiff was cited for refusing to obey an order. *Id.* Plaintiff was also provided access to the medical department minutes later, at 8:25 a.m. *Id.*

## IV. Plaintiff Has Received Consistent Access to Proper Medical Care.

Plaintiff has received more than adequate access to medical care during his detention at the ADC. On May 24, 2024, after Plaintiff flooded his cell by overflowing the sink, Plaintiff was seen by the medical staff twice. First, at 6:15 p.m., Plaintiff was assessed by nursing for complaints of neck, back, and right leg pain, as well as bleeding teeth. **Exhibit 8, Medical Record**. He requested a pillow for support. *Id*. He declined medication and stated he "would like to heal naturally." *Id.* Plaintiff was seen again by Defendant Nurse Gurbutwal, who responded immediately to a call from correctional officers at 1909 that Plaintiff had suffered an anxiety attack. **Exhibit 9**, **Medical Record**. When Gurbutwal arrived at Plaintiff's cell, he was extremely agitated and uncooperative, screaming, and punching the metal bed and concrete walls. *Id*. Plaintiff refused to allow Gurbutwal to take his vital signs, but he complained of no medical conditions. *Id.*

Plaintiff also received medical care after the April 17 and April 19, 2024 incidents. On April 17, 2024 at approximately 2:20 p.m., nursing responded to Plaintiff's cell following a radio call for an inmate complaining of shortness of breath and assault. **Exhibit 10, Medical Record**. Again, Plaintiff refused to cooperate with the assessment. *Id.* The nurse documented:

> No blood or dirt visible on patient's t-shirt. No stretch marks or stretched areas on patient's t-shirt. Patient appears clean and well kept. . . No reddened areas on skin. . . Patient continues to repeatedly yell, curse, and threaten Security and Medical Staff. Patient repeatedly refused to follow directive to not talk or yell during vital signs check. Patient repeatedly failed to comply with requests to show areas where he claims he was assaulted. When asked to lift the hem of shorts to see skin of legs covered by shorts, patient made claims of intention of sexual assault . . . Patient also refused to show torso areas, back, and abdomen covered by white t-shirt.

*Id*. The nurse documented that the patient would continue to be monitored as needed, and she advised Security to notify Medical if necessary. *Id*. Approximately eight hours later, at approximately 10:05 p.m., Defendant Nurse Musngi responded to Plaintiff's cell following a radio

call from correctional officers. **Exhibit 11, Medical Record**. Nurse Musngi documented she could hear Plaintiff yelling upon her arrival to the unit. *Id*. Plaintiff was in no apparent distress, but was yelling and screaming that officers had "assaulted him, strangled, choked, he nearly fainted, dizzy." *Id*. Nurse Musngi examined him and took vital signs, which revealed an elevated blood pressure. *Id*. The nurse called the on-call provider, who ordered Clonidine (for hypertension and anxiety), but Plaintiff refused to take it, claiming staff were "trying to kill him." *Id*. Nurse Musngi placed Plaintiff on the list for routine blood pressure checks, placed him on the list to be seen by a provider at the next clinic visit, and referred him to mental health. *Id.*

On April 19, 2024, Plaintiff was seen by clinical staff three times, each time exhibiting irate and disruptive behavior to medical and correctional staff and refusing offered treatment. **Exhibit 12, Medical Record** (8:42 a.m., 1:04 p.m., 1:38 p.m.). At 8:42 a.m., Defendant Physician's Assistant Weaver attempted to assess Plaintiff, but he refused, stating, among other things, '"You better fucking evaluate me and do your job. If you don't my lawyer will be involved and I am going to sue you."' *Id*. PA Weaver encouraged him to reveal any injuries or emergent concerns so that PA Weaver could perform an examination, but Plaintiff refused. *Id*. Based on Plaintiff's symptoms of paranoia and acute psychosis, PA Weaver referred him to mental health. *Id.*

As evidenced by the medical records, Plaintiff has received medical treatment numerous times from the date he arrived at the ADC through the present. Despite his uncooperativeness, correctional officers have continued to facilitate his access to medical staff and medical staff have continued to examine him and offer treatment plans. Even when offered a transport outside of the facility for medical care, Plaintiff has refused. *See, e.g.,* **Exhibit 13, Video of April 23, 2024**

**Refusal; Exhibit 14, Video of April 24, 2024 Refusal**. Thus, Plaintiff simply cannot support his allegations that he has been denied access to proper medical care.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes courts to issue preliminary injunctions and temporary restraining orders. "Generally, preliminary injunctions aim 'to preserve the relative positions of the parties' and protect the status quo.'" *Toure v. Hott,* 458 F. Supp. 3d 387, 386 (E.D. Va. 2020) (quoting *United States v. South Carolina,* 720 F.3d 518, 524 (4th Cir. 2013)). Mandatory preliminary injunctions "alter the status quo," and are "disfavored." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 235-36 (4th Cir. 2014) (quoting *Taylor v. Freeman*, 34 F.3d 266, 270 n. 2 (4th Cir. 1994)); *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 n.8 (4th Cir.), *cert. denied sub nom. Givens v. Mountain Valley Pipeline, LLC*, 140 S. Ct. 300 (2019).

The legal standard for the issuance of a preliminary injunction is well-settled. "[F]or a plaintiff to obtain a preliminary injunction, he must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without such injunctive relief; (3) that the balance of equities weighs in his favor; and (4) that granting a preliminary injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 20 (2008); *Di Biase v. SPX Corp.,* 872 F.3d 224, 230 (4th Cir. 2017). "In order to obtain injunctive relief, a plaintiff must satisfy all four of the *Winter* factors." *Perry v. Correct Care Sol., LLC,* No. 1:17cv586 (LO/IDD), 2017 WL 11519171, at *2 (E.D. Va. Oct. 30, 2017) (quoting *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated by Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 559 U.S. 1089 (2010), *reissued*, 607 F.3d 355 (4th Cir. 2010)).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-30 (2d ed. 1995)). A preliminary injunction shall be granted only if the moving party clearly establishes entitlement to the relief sought. *Fed. Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981); *see also Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) ("Preliminary injunctions are not to be granted automatically. Moreover, where serious issues are before the court, it is a sound idea to maintain the status quo ante litem.").

## ARGUMENT

### I. The Court Should Abstain from Intervening in the Circuit Court's Decision to Deny Plaintiff Bond or Order that Plaintiff Be Held Under House Arrest.

Plaintiff's requested relief in the Motion contravenes the well-established abstention doctrine established by the U.S. Supreme Court in *Younger v. Harris,* 401 U.S. 37 (1971) and its progeny. Plaintiff's Motion seeks extraordinary relief in the form a mandatory preliminary injunction transferring the Plaintiff from the ADC to "another pre-trial holding facility or a transfer to monitored house arrest." Pl.'s Mot. at 1.

In *Younger,* the Supreme Court articulated the "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger*, 401 U.S. at 41. "Based upon principles of federalism, the Supreme Court in *Younger* articulated the policy of comity underlying the federal courts' obligation to refrain from adjudicating the merits of federal constitutional claims in an underlying state criminal action: adjudicating such claims needlessly injects federal courts into ongoing state criminal prosecutions, undermines the state's ability to enforce its laws, and does not show 'a proper respect for state functions.'" *Nivens v.*

*Gilchrist,* 319 F.3d 151, 153 (4th Cir. 2003) ("*Nivens I*"); *Younger*, 401 U.S. at 44. In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), the Court held that a federal court should abstain from interfering in a state proceeding, even though it has jurisdiction to reach the merits, if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; (2) that implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit. *Nivens,* 319 F.3d 151 (citing *Middlesex Cnty Ethics Comm'n*, 457 U.S. at 432).

Here, all three of the circumstances identified in the *Middlesex* inquiry are present here. First, as evident by the Complaint, the pending criminal proceedings against Plaintiff were instituted prior to this federal action. *See* Compl. at Ex. 3 (Criminal Complaint dated April 7, 2023). Plaintiff's original charges of manslaughter have been elevated to murder, and his trial is scheduled to commence on December 2, 2024. Compl. ¶ 68. Plaintiff initiated this proceeding, in part, to circumvent the Circuit Court's pending criminal proceedings against him. On July 19, 2024, Judge Carroll A. Weimer, Jr. denied Plaintiff's Motion to Reconsider Bond. **Exhibit 15, Prince William County Circuit Court Order Denying Motion to Reconsider Bond**. The Circuit Court concluded that "there is probable cause that the defendant would be a danger to himself and the community if released." *Id.*

Second, Plaintiff's Motion implicates important, substantial, and vital state interests in preserving circuit court rulings related to bond. The Supreme Court has stated that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986). "[T]he fixing of bail 'is peculiarly a matter of

discretion with the trial court.'" *United States v. Mitchell,* 733 F.2d 327, 331 (4th Cir. 1984) (quoting *United States v. Wright*, 483 F.2d 1068, 1069 (4th Cir. 1973)). Accordingly, the circuit court's decision to deny Plaintiff bond or any other form of pretrial release implicates important state interests. *See Sparks v. Mitchell Cnty*, No. 1:21-cv-00050-MR, 2021 WL 781508, at *2 (W.D.N.C. Mar. 1, 2021).

Finally, Plaintiff could have raised constitutional challenges to his detention in the circuit court proceedings. On a Motion to Reconsider Bond, the circuit court denied bond. "Abstention does not suddenly become improper simply because [the plaintiff] lost on the merits in the state court." *Nivens v. Gilchrist*, 444 F.3d 237, 243 (4th Cir. 2006) ("*Nivens II*"). The Court should abstain from intervening in the Prince William County Circuit Court's ongoing criminal proceedings, including its decision to deny Plaintiff bond or order any other form of pretrial release, including house arrest.

## II. Plaintiff Has Not Clearly Shown a Likelihood of Success on the Merits.

Plaintiff has not shown a likelihood of success on the merits regarding any of the claims asserted in the Complaint.

The Motion does nothing more than offer conclusory statements that Plaintiff has sustained injuries by correctional officers and has been denied access to medical care at the ADC. In support of these averments, Plaintiff relies wholly on allegations from his Complaint. *See, e.g.*, Mot. at 3 (reciting "that [Plaintiff] has alleged that several officers beat him on at least three separate occasions"). However, as set forth herein and in Defendant Superintendent Meletis and the ADC's Motion to Dismiss, Plaintiff's allegations in the Complaint are belied by evidence that Plaintiff attaches to his Complaint. *See, e.g.*, Compl. at Exhibit 7 (demonstrating that Plaintiff received access to, and frequently rejected, medical care between July 10, 2023 and January 17, 2024).

Plaintiff's allegations are also contradicted by the evidence attached hereto. *See, e.g.*, Exhibits 13-14 (video footage of Plaintiff refusing the opportunity for transport to an outside medical provider). Plaintiff falls far short of meeting his burden under Rule 65.

**III. Plaintiff Will Not Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief.**

Given that Plaintiff has not demonstrated that he has been denied access to medical care at the ADC, Plaintiff will not suffer irreparable harm in the absence of preliminary injunctive relief.

**IV. The Balance of the Hardships Does Not Weigh in Favor of a Preliminary Injunction.**

The balance of hardships also does not weigh in favor of a preliminary injunction in this case. Plaintiff is not suffering a hardship due to his detention in the ADC where, as evident by the evidence presented herein, Plaintiff receives consistent access to proper medical care.

**V. Issuance of a Preliminary Injunction Is Not in the Public Interest.**

Finally, issuing a preliminary injunction is not in the public interest. "It is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substantiate their judgment for that of the trained penological authorities charged with the administration of such facilities." *Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994); *see also Rhodes v. Chapman,* 452 U.S. 337, 349 (1981) ("[C]onsiderations [of appropriate prison management] properly are weighed by the legislature and prison administration rather than a court."); *Dean v. Coughlin,* 804 F.2d 207, 214 (2d Cir. 1986) (agreeing that relief was necessary, but nonetheless vacating injunction imposing comprehensive dental care plan on the state's prison system as a "departure from the basic concepts of comity and federalism").

In *Taylor,* the Fourth Circuit vacated a district court's order issuing a mandatory preliminary injunction ordering that prison officials reduce total inmate population by 30 percent of operating capacity in two months. *Id.* at 274. In so ordering, the court recognized that "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts" even "where conditions at the prisons have been adjudged unconstitutional following trial on the merits." *Id.* at 269.

Here, Plaintiff's requested preliminary injunction contravenes the public interest. The Motion should be denied.

## CONCLUSION

The Emergency Motion for Preliminary Injunction should be denied.

Respectfully submitted,

COLONEL PETER A. MELETIS, and
PRINCE WILLIAM-MANASSAS REGIONAL ADULT DETENTION CENTER

By: /s/

William W. Tunner (VSB No. 38358)
Rachel W. Adams (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
radams@t-mlaw.com

*Counsel for Defendants Colonel Peter A. Meletis and Prince William-Manassas Regional Adult Detention Center*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Elaine Jarvis, Esq.
Jarvis Law PLLC
128 N. Royal Avenue
Front Royal, VA 22630
elaine@jarvislaw.org

*Counsel for Plaintiff*

Rosalie Pemberton Fessier, Esq.
Brittany Elizabeth Shipley, Esq.
TimberlakeSmith
25 North Central Avenue
P.O. Box 108
Staunton, VA 24402-0108
rfessier@timberlakesmith.com
bshipley@timberlakesmith.com

*Counsel for Defendants Prince William-Manassas Regional Jail Board, Hill, Ashworth*

Alexander Francuzenko, Esq.
Thea Alicia Paolini, Esq.
Cook Craig & Francuzenko PLLC
3050 Chain Bridge Road
Suite 200
Fairfax, VA 22030
alex@cookcraig.com
tpaolini@cookcraig.com

*Counsel for Defendants Hurlock, Powell, Kepler, Feder, Daniels, Waleisky, Suda, Darling, Gordon, Foster, Willi, Booker, Nordike, Tipton, Canas, and Hargrove*

Taylor Denslow Brewer, Esq.
Moran Reeves Conn PC
1211 E. Cary Street
Richmond, VA 23219
tbrewer@moranreevesconn.com

*Counsel to Defendant Alvarado-Gomez, Gurbutwal, Liagouris, and Musngi*

By: __/s/______________________________

William W. Tunner (VSB No. 38358)
Rachel W. Adams (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
radams@t-mlaw.com

*Counsel for Defendants Colonel Peter A. Meletis and Prince William-Manassas Regional Adult Detention Center*