**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MUSTAFA N. ALJAZAIRI,

Plaintiff,

v. Case No. 1:24-cv-01537-CMH-LRV

COLONEL PETER A. MELETIS, *et al*.,

Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANT MELETIS' AND PRINCE WILLIAM-MANASSAS REGIONAL ADULT DETENTION CENTER'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant Colonel Peter A. Meletis, in his individual capacity and official capacity as Superintendent of the Prince William-Manassas Regional Adult Detention Center ("Superintendent Meletis"), and the Prince William-Manassas Regional Adult Detention Center (the "ADC") (collectively, "Defendants"), by counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), submit this memorandum in support of their motion to dismiss all counts against them in the Amended Complaint (ECF No. 55). For the reasons set forth below, the Court should grant the Motion.

## INTRODUCTION

Plaintiff Mustafa N. Aljazairi's ("Plaintiff") claims against the Defendants, pursuant to 28 U.S.C. § 1983, related to allegations that he was assaulted by correctional officers, denied adequate access to medical care, and placed in the ADC's disciplinary detention unit for (what he characterizes as) "false violations" of ADC policies, should be dismissed as a matter of law.

First, all claims asserted against the ADC must be dismissed because the facility is an inanimate object and not a "person" within the meaning of § 1983. Second, the ADC and

Superintendent Meletis, in his official capacity as Superintendent of the ADC, are entitled to Eleventh Amendment immunity from claims for monetary damages.

Third, Plaintiff claims that he suffered injuries in connection with three assaults inflicted by correctional officers and was, consequently, denied medical care after those assaults are simply unsupported by plausible allegations. In the Amended Complaint, Plaintiff attempts to avoid dismissal, which was warranted based on his prior Complaint, by simply deleting reference to the voluminous medical records attached to the prior Complaint (ECF Nos. 3-1, 4), which show that he was seen by medical staff almost daily in connection with his many complaints. While Federal Rule of Civil Procedure 12(b)(6) mandates that Defendants must accept as true all well-plead allegations, the Court need not accept allegations which contradict the exhibits appended to the original Complaint. Under well-established law, the Court may take judicial notice of those exhibits and rule on the sufficiency of the allegations in the Amended Complaint.

Fourth, Plaintiff's claim that he was housed in the disciplinary detention unit must be dismissed because well-established law dictates that jail officials are entitled to discipline pretrial detainees for infractions committed in custody without running afoul of the U.S. Constitution. Plaintiff's allegations in the Amended Complaint fail to plausibly support a claim that the discipline imposed by ADC staff violated his Fourteenth Amendment rights. Finally, the Court should dismiss the *Monell* claim asserted against Defendants on the grounds that Plaintiff fails to plead plausible facts to support a claim under any of the many theories advanced as a matter of law. The Amended Complaint should be dismissed.

## BACKGROUND

Plaintiff is a pretrial detainee at the ADC. (ECF No. 55, ¶¶ 1, 7 (hereinafter, the "Am. Compl."). Plaintiff alleges that he suffered three assaults by correctional officers on May 24, 2023,

April 17, 2024, and April 19, 2024. *Id.* ¶¶ 50-98. After these three alleged assaults, Plaintiff claims that he was denied medical care in connection with the injuries he allegedly sustained. *Id.* ¶¶ 64, 90, 97, 120. However, these allegations must be summarily ignored by the Court because they are directly contradicted by the over 200-pages of medical records and incident reports which he attaches to his Complaint. (ECF No. 2 (hereinafter "Compl.") at Ex. 7 (ECF Nos. 3-1, 4).

On May 24, 2023, Plaintiff was disciplined twice for cupping his hands and splashing water out of his sink into his cell floor and for threatening the correctional officers, who ordered that he stop yelling and banging his cell tray slot. Compl. at Ex. 8A-8B (ECF No. 5.) From July 10, 2023 to January 17, 2024 (the dates of the medical records attached to the Complaint), Plaintiff was seen by the ADC medical department on an almost daily basis in connection with his many complaints. During these encounters, Plaintiff generally refused medical treatment from the providers, *see, e.g.*, *id.* at Ex. 7 at pp. 105-07, 111-13, 163-65, 14, 199; *id.* at Ex. 8E. When he allowed providers to examine him, providers found absolutely no evidence to substantiate his alleged injuries, *e.g., id.* at p. 38 (medical record, dated January 12, 2024, which concludes that the provider did "not see any evidence of right shoulder injury/forearm injury, bone sticking out of left knee, and internal bleeding that he is alleging"). Indeed, Plaintiff's own statements documented in these records contradict his claim that he was subject to excessive force by correctional officers.

On October 19, 2023, Plaintiff alleges that Superintendent Meletis met with Plaintiff and ordered that Plaintiff be placed in Protective Custody. Am. Compl. ¶ 100. On November 20, 2023, Plaintiff's family members allegedly met in person with Superintendent Meletis and Major Hurlock to complain about his confinement. Am. Compl. ¶ 102. This meeting occurred while Plaintiff was being seen regularly by medical professionals. Compl. at Ex. 7.

Plaintiff alleges that he has filed numerous complaints and grievances with federal, state, and county law enforcement agencies, the Governor's Office, the Attorney General's Office, Congresswoman Abigail Spanberger, and Superintendent Meletis, which he claims have gone unanswered. Am. Compl ¶ 101. Plaintiff also alleges that he has been placed in "Protective Custody" and the "Disciplinary Detention Unit" for what he characterizes were "false violations of Jail's policies." *Id.* ¶ 108. Documentation attached to the initial Complaint also demonstrates that Plaintiff was disciplined in connection with violations of ADC policy, including Mr. Aljazairi "yell[ing] and cursing" at correctional staff, Compl. at Ex. 8A; splashing water out of his sink onto the cell floor, *id.* at Ex. 8B; using another inmate's personal identifying information to make a personal call, in violation of policy, *id.* at 8H; and refusing to cooperate with scheduled searches of his cell for damage and contraband, *id.* at Ex. 8I.

Plaintiff attributes his alleged injuries to "unwritten policies" of the ADC, Superintendent Meletis' alleged failure to train correctional officers, and certain decisions made by Superintendent Meletis to deny his complaints and grievances. *Id.* ¶¶ 189-90. Plaintiff seeks compensatory damages, declaratory and injunctive relief, including "immediate equitable relief including either a transfer to house arrest or transfer to a safe facility,"[1] as well as other demands, and attorney's fees and costs. *Id.* at pp. 39-42.

## LEGAL STANDARD

### I. Rule 12(b)(1) Standard.

A motion to dismiss under Rule 12(b)(1) tests the court's subject matter jurisdiction over a plaintiff's claim. The plaintiff bears the burden of establishing that jurisdiction exists. *Evans v.*

[1] The Court denied Plaintiff's Motion for Preliminary Injunction on November 1, 2024, on the grounds that Plaintiff failed to show irreparable harm without the injunction or that there is a likelihood of success on the merits of his claims. (ECF No. 79.)

*B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant makes a facial challenge to subject matter jurisdiction based upon the allegations in the complaint, the Rule 12(b)(6) standard applies: the facts alleged in the complaint are taken as true. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009). However, if a defendant challenges the factual predicate of subject matter jurisdiction, the trial court may consider evidence without converting the proceeding to one for summary judgment. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). The burden of proving subject matter jurisdiction in the circumstances is on the plaintiff, the party asserting jurisdiction. *Id.* The presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction. *Kerns,* 585 F.3d at 192.

**II. Rule 12(b)(6) Standard.**

When considering a Rule 12(b)(6) motion to dismiss, the court "should accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint need not assert detailed factual allegations but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). In addition, the court "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc.*, 213 F.3d at 180; *accord Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

**ARGUMENT**

The Court should dismiss all claims asserted against Defendants. First, the ADC should be dismissed from this action because, as an inanimate facility, it lacks the capacity to be sued and is

not a "person" within the meaning of 42 U.S.C. § 1983. Second, Plaintiff's claims for monetary relief against the ADC and Superintendent Meletis, in his official capacity, are barred by the Eleventh Amendment. Third, Plaintiff has failed to sufficiently allege facts to support a supervisory liability claim, pursuant to § 1983, against Superintendent Meletis, based on allegations that Superintendent Meletis ratified any use of excessive force by correctional officers, officers were deliberately indifferent to Plaintiff's serious medical conditions, or officers disciplined Plaintiff for violating ADC policy. Finally, Plaintiff has failed to sufficiently allege facts to support a *Monell* claim, under ratification, failure to train, or persistent and widespread policy or custom theories.

**I. The ADC Lacks the Capacity to Be Sued and Is Not A "Person" Amenable to Suit.**

The Amended Complaint asserts four claims against the ADC, under 42 U.S.C. § 1983, seeking both declaratory and injunctive relief, as well as monetary relief. As an initial matter, the Court should dismiss each claim because the ADC is not capable of being sued, under Rule 17(b), and for purposes of § 1983, the ADC is not a "person" amenable to suit. Counts I, VII, and VIII should be dismissed against the ADC.

The ADC is a facility used to hold or confine any person who could lawfully be held or confined in a jail operated or maintained separately. Va. Code § 53.1-105. It is an inanimate object such as a building, facility, or grounds. *Critzer v. Prince William Adult Detention Center*, No. 3:22CV491, 2023 WL 5109546, at *2 (E.D. Va. Aug. 9, 2023) (dismissing complaint on the grounds that the ADC is but an inanimate object and, thus, not amenable to suit under § 1983). Such buildings or facilities lack the capacity to be sued and are likewise not persons amendable to suit under 42 U.S.C. § 1983. *Id.*; *see also Preval v. Reno*, No. 99-6950, 2000 WL 20591, at *1 (4th Cir. 2000) (per curiam) (unpublished) (affirming dismissal of the Piedmont Regional Jail and

recognizing that the jail is not a "person" and is, therefore, not amenable to suit under § 1983); *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 894 (E.D. Va. 1992) (dismissing the Chesapeake City Jail as lacking the capacity to be sued and not a "person" amenable to suit); *Harvey v. Simon,* No. 3:16CV604, 2017 WL 1706262, at *4 (E.D. Va. Apr. 28, 2017) (dismissing Dillwyn Correctional Center and Hampton Roads Regional Jail on the grounds that neither are "persons" amenable to suit); *Thorne v. Hale,* No. 1:08cv601 (JCC)., 2009 WL 890136, at *11 (E.D. Va. Mar. 26, 2009) (Rappahannock Regional Jail is not a "person" who can be sued under § 1983); *Easter v. Virginia,* No. 4:05cv162, 2006 WL 5915495 (E.D. Va. Sept. 5, 2006) (Virginia Peninsula Regional Jail does not have the capacity to be sued).

The ADC lacks the capacity to be sued and is not a "person" amenable to suit under § 1983. Therefore, the Court should dismiss all claims against the ADC.

## II. Plaintiff's Claims for Monetary Relief Against the ADC and Superintendent Meletis, in his Official Capacity, Are Barred by Eleventh Amendment Immunity.

The ADC and Superintendent Meletis, in his official capacity as Superintendent of the ADC, are entitled to Eleventh Amendment immunity from Counts V, VI, and VIII, which are claims for monetary relief.

"It is well-established that the Eleventh Amendment bars suit in federal court by an individual citizen against a sovereign state of the Union." *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996); U.S. Const. amend. XI. "This immunity extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity." *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (internal citations omitted). "When the state's treasury would be responsible for paying any judgment against a municipality or other governmental entity for monetary damages, the entity is considered an arm of the state for purposes

of the Eleventh Amendment." *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013) (citing *Cash v. Granville Cnty. Bd. of Educ*., 242 F.3d 219, 223 (4th Cir. 2001)).

Local and regional jails in Virginia are considered to be arms of the state under the Eleventh Amendment and, consequently, are afforded Eleventh Amendment immunity. *Andrews v. Taylor,* No. 3:17-cv-533-REP, 2018 WL 2108022, at *8 (E.D. Va. May 7, 2018) (collecting cases) (*sua sponte* granting Eleventh Amendment immunity to the Chesterfield County Jail). Eleventh Amendment immunity also extends to claims against state officials, in their official capacity, seeking monetary damages. *Huang v. Bd. of Governors of Univ. of N.C*., 902 F.2d 1134, 1138 (4th Cir. 1990) (finding the plaintiff "properly concedes that the Eleventh Amendment bars the pendent state monetary damages claims"); *Caramillo v. Correct Care Solutions,* No. 2:19cv362, 2020 WL 4747786, at *9 (E.D. Va. Feb. 28, 2020), *adopted by* 2020 WL 4768769 (E.D. Va. May 13, 2020). The ADC is a "state actor," which acts under the "mantle of state authority" and is "regulated by and subject to the Commonwealth of Virginia." Am. Compl. ¶ 8. Superintendent Meletis is "sued in his individual and official capacity." *Id.* ¶ 13.

Accordingly, Plaintiff's claims for monetary damages against the ADC and Superintendent Meletis, in his official capacity, are barred by the Eleventh Amendment. Counts V, VI, and VIII against the ADC and Superintendent Meletis, in his official capacity, should be dismissed.

## III. Plaintiff's Supervisory Liability Claim Against Superintendent Meletis Should Be Dismissed.

In Counts V and VIII of the Complaint, Plaintiff asserts supervisory liability claims against Superintendent Meletis under three theories:

- Superintendent Meletis allegedly knew or should have known that correctional officers engaged in excessive force towards inmates. Am. Compl. ¶ 174.
- Superintendent Meletis allegedly "consciously denied" Plaintiff medical treatment. Am. Compl. ¶¶ 177.

- Superintendent Meletis allegedly subjected Plaintiff to "five hundred days of solitary confinement," in Protective Custody and the Disciplinary Detention Unit. Am. Compl. ¶ 179.

Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985)). The Fourth Circuit held in *Slakan* that "liability is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* (quoting *Slakan*, 737 F.2d at 372-73). The Fourth Circuit has set forth three elements to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

*Shaw*, 13 F.3d at 799 (collecting cases); *c.f., Timpson v. Anderson Cty. Disabilities & Special Needs Bd.,* 31 F.4th 238, 257-257-58 (4th Cir. 2022).

**A. The Court Should Dismiss Plaintiff's Claims Related to Officers' Alleged Use of Force and Deliberate Indifference to his Medical Needs Under § 1983.**

The Court should dismiss the supervisory liability claim against Superintendent Meletis related to officers' alleged use of force and deliberate indifference to his medical needs. As an initial matter, the Amended Complaint fails to allege facts to support an inference that Superintendent Meletis had "actual or constructive knowledge" prior to alleged May 24, 2023 incident, such that he can be charged with knowledge of a "pervasive and unreasonable risk of

constitutional injury" to Plaintiff. *Wills*, 966 F. Supp. 2d at 662. From the date of the Plaintiff's arrival at the ADC, on or about April 7, 2023, to October 19, 2023 (the date of the alleged meeting between Superintendent Meletis and Plaintiff in his cell), there are no allegations that Superintendent Meletis knew of Plaintiff's presence at the ADC, let alone any "pervasive and unreasonable risk" of harm to him.

Importantly, the Complaint lacks plausible allegations that Plaintiff suffered his alleged injuries or was denied medical care, at all. In Exhibit 7 of the Complaint, Plaintiff attaches medical records from the ADC, dated July 10, 2023, to January 17, 2024, which demonstrate that Plaintiff was seen by medical staff almost daily for his complaints, including the very injuries he claims in this lawsuit related to the alleged May 24, 2023 incident. Compl. at Ex. 7 (ECF No. 3-1).

In Exhibit 8 to the Complaint, Plaintiff attaches incident reports which demonstrate that Plaintiff was not subject to any excessive force by correctional officers. Compl. at Ex. 8A-8B (ECF No. 5.) On May 24, 2023, at approximately 12:15 p.m., Plaintiff was yelling out of his cell door ray slot. Compl. at Ex. 8A (ECF No. 5 at p. 1.) Plaintiff ignored correctional officers' orders to stop yelling and continued to "bang on the door" and threatened the officer that "he would see [him] on the outside." *Id.* Later that day, Plaintiff was "cupping his hands and splashing water out of his sink." Compl. at Ex. 8B (ECF No. 5 at p. 2). Plaintiff was disciplined for a violation of ADC policy. *Id.*

Defendants respectfully request that the Court take judicial notice of the exhibits to Plaintiff's prior Complaint when ruling on the sufficiency of the allegations contained in the Amended Complaint. "For purposes of [a] motion to dismiss under Rule 12(b)(6), it is appropriate that the factual allegations in the Amended Complaint are taken as true, and it is also appropriate to take judicial notice of additional facts." *United States v. Unisys Corp.*, 178 F. Supp. 3d 358, 363

n.2 (E.D. Va. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding"); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549 (4th Cir. 2013) (noting the judicial notice exception for evaluating Rule 12 motions), *abrogated on other grounds by Reed v. Town v. Gilbert*, 135 S. Ct. 2218 (2015). Courts may take judicial notice of "official public records," including its own docket filings. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *see Chelko v. Does*, No. 3:18-cv-536, 2019 WL 3294201 (W.D.N.C. July 22, 2019) (holding that plaintiff's prior complaint and other documents from a prior suit are official public records of which the court may take valid judicial notice in ruling on defendant's 12(b)(6) motion).

"While a court may not consider the allegations of the original complaint, it may consider certain exhibits attached to the original complaint that are integral to and explicitly relied on in the amended complaint, and whose authenticity is not challenged." *Jeffrey M. Brown Associates, Inc. v. Rockville Center Inc.*, 7 F. Appx. 197, 202 (4th Cir. 2001) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)) (cleaned up). "Such exhibits are not superseded if the amended complaint effectively integrates them." *Id*. "Moreover, consideration of exhibits that were attached to the original complaint, omitted from the amended complaint, but still referred to, integral to, and relied upon in the amended complaint, furthers the policy of preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Id*. at 202–03 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *Phillips*, 190 F.3d at 618) (cleaned up). In *Cecil v. Winston*, the court applied this reasoning to consider exhibits attached to a first amended complaint but not attached to a second amended complaint for the purpose of ruling on a motion to dismiss. No. 7:20-cv-349, 2021 WL 3642054 *3 (W.D. Va. Aug. 17, 2021).

Plaintiff's medical records attached to the initial Complaint demonstrate that he was seen by ADC medical staff numerous times in connection with the alleged May 24, 2023 incident and his claim that he suffered "internal bleeding" as a result of that incident. Compl. at Ex. 7 at p. 29, 38, 121, 154. As documented by those records, Plaintiff's physical exams were "unremarkable" and he "declined any imaging or bloodwork because he doesn't trust the facility." *Id.* "[Plaintiff] declined any medical imaging, lab studies, treatment, or intervention." *Id.*; *see also id.* at p. 128. In the medical record dated January 12, 2024, the medical provider recognized that Plaintiff's chest x-ray was "unremarkable" and right forearm x-ray "shows no fracture." *Id.* at p. 38. In fact, the provider recognized on January 12, 2024, that "video surveillance shows that [Plaintiff] was playing basketball (shooting and jumping) on camera and kicking a soccer ball without any issues this past week." *Id.*

As evident by these records, and those noted below, Plaintiff received routine medical care, which found no evidence of any of his claimed injuries, and he frequently refused treatment.[2] Compl. at Ex. 7. p. 199 (Plaintiff's medical treatment refusal form dated September 13, 2023), *id.* at p. 184 (Plaintiff's medical treatment refusal form dated September 27, 2023), *id.* at pp. 180-81 (Medical record showing that Plaintiff was treated for anxiety dated October 6, 2023), *id.* at p. 179 (Medical record showing that Plaintiff had vitals taken on October 12, 2023), *id.* at p. 177 (Medical record showing that Plaintiff was seen by nursing staff on October 26, 2023 and "states that he is feeling okay"), *id.* at p. 168 (Medical record showing that Plaintiff was seen by nursing staff for complaints regarding eyes on November 9, 2023), *id.* at pp. 163-65 (Medical record dated

[2] To the extent that Plaintiff contends he should have received further or "better" medical treatment, Plaintiff has failed to state a claim as a matter of law. "Plaintiff's belief or opinion that he required better treatment does not establish a Constitutional violation." *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and physician over the inmate's proper medical care does not state a § 1983 claim unless exceptional circumstances are alleged.").

November 9 and 11, 2023, showing that Plaintiff reported "internal bleeding to [a]ttorney on the outside but has not reported to medical" and refused medication stating "I don't need medication, I only need to go to the rec yard"), *id.* at p. 128 (Medical record dated December 5, 2023, showing that Plaintiff reported "old injury to right arm and internal injury from incident around 5/2023" and declining nurse's request to see his right arm), *id.* at p. 121 (Medical record dated December 6, 2023, showing that Plaintiff refused medical examination in connection with his claim that he was assaulted and insisted on transport to an outside facility without preliminary examination), *id.* at p. 119 (Plaintiff's medical treatment refusal form dated December 7, 2023), *id.* at pp. 111-13 (Plaintiff's medical treatment refusal form dated December 9, 2023, and related medical record noting that Plaintiff refused to provide a stool sample), *id.* at pp. 105-07 (Plaintiff's medical treatment refusal form dated December 10, 2023, and related medical records noting that Plaintiff refused blood work), *id.* at pp. 91-93 (Medical record dated December 13, 2023, in which Plaintiff reported right shoulder and right elbow pain "due to history of injury 7 months ago during arrest"), *id.* at p. 83 (Medical record dated December 14, 2023, in which Plaintiff refused lab work for the third time), *id.* at p. 74 (Medical record dated December 18, 2023, in which Plaintiff reported right arm and internal bleeding injuries from alleged assault, declined medication and insisted on "natural remedies such as having more recreation time"), *id.* at pp. 50-53 (Medical records dated January 5-8, 2024, demonstrating that his right forearm was x-rayed after his complaint that his "bone was sticking out of his leg and arm," despite "no visible injuries noted"), *id.* at p. 29 (Medical record reflecting findings of x-ray to Plaintiff's right forearm and concluding that "there is no fracture, dislocation, arthritic change, or soft tissue abnormality"), and *id.* at p. 38 (Medical record dated January 12, 2024, which concluded that the provider did not see any evidence of right

shoulder injury/forearm injury/bone sticking out of left knee and internal bleeding that he is alleging).

Similarly, the two records attached to the Complaint related to the May 24, 2024 incident demonstrate that Plaintiff was not subject to excessive force by the correctional officers. Compl. at Ex. 8A-8B (ECF No. 5.) He was disciplined for splashing water into his cell floor and for threatening the correctional officers. *Id.*

Plaintiff's allegations that he has suffered any alleged injuries in connection with any assault at the hands of correctional officers at the ADC and was subsequently denied access to medical care must be disregarded under the "exhibit-prevails rule." *Balogh v. Virginia,* __ F.4th __, 2024 WL 4551724, at *2 n.6 (4th Cir. Oct. 23, 2024); *Virginia is for Movers, LLC v. Apple Fed. Credit Union,* No. 1:23-cv-567, 2024 WL 1091786, at *3 (E.D. Va. Mar. 13, 2024); Under this rule, "if a plaintiff 'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'" *Tharrington v. Amor Correctional Health Care,* No. 3:19-cv-338, 2020 WL 5951156, at *3 (E.D. Va. Oct. 7, 2020) (quoting *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 754 (7th Cir. 2002)). Put simply, "in the event of a conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." *Fayetteville Inv'rs,* 936 F.2d at 1465.

In sum, Plaintiff's attempt to circumvent his prior admissions in his initial Complaint by simply omitting them from the Amended Complaint must be rejected. The Amended Complaint fails to plausibly plead a claim that Superintendent Meletis may be liable to Plaintiff under a supervisory liability theory for the alleged assaults by correctional officers and deliberate indifference to his medical needs. Without such plausible allegations, Counts V and VIII fail and must be dismissed.

**B. The Court Should Dismiss Plaintiff's Claim Related to his Detention in Protective Custody and the Disciplinary Detention Unit.**

In Count VIII, Plaintiff asserts a due process violation under the Fourteenth Amendment, in connection with Superintendent Meletis' alleged decision to place Plaintiff in Protective Custody and the Disciplinary Detention Unit for what he claims are "minor infractions." Am Compl. ¶ 213.

"In order to prevail on a substantive due process claim, the pretrial detainee must show that a particular restriction was either: '(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective.'" *Williams v. Stirling*, 912 F.3d 154, 174 (4th Cir. 2018) (quoting *Slad v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 250 (4th Cir. 2005)). In *Bell v. Wolfish*, the Supreme Court distinguished between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may. 441 U.S. 520, 546 (1979). In this case, Plaintiff has not alleged plausible facts to support a claim that Superintendent Meletis knew or should have known that any discipline imposed on Plaintiff was done so with an intent to punish or not reasonably related to a legitimate nonpunitive governmental objective.

In fact, Plaintiff alleges that he told Superintendent Meletis that he did not feel safe, and Superintendent Meletis correspondingly ordered Plaintiff to be placed in Protective Custody. Am. Compl. ¶ 100. Additionally, Plaintiff lists the violations of ADC policy for which he was subsequently placed in the disciplinary unit in paragraph 110 of the Complaint. Am. Compl. ¶ 110. "[J]ail officials are entitled to discipline pretrial detainees for infractions committed in custody and to impose restrictions for administrative purposes without running afoul of *Bell*." *Williamson*, 912 F.3d at 175. Plaintiff's allegations that these "minor infractions" should not have warranted discipline does not state a claim under the Fourteenth Amendment. *See Cole v. Holloway,* 631 F.

App'x 185, 186 (4th Cir. 2016) (Generally, "a false discipline charge cannot serve as the basis for a constitutional claim."); *Robinson v. Fenner,* No. 3:18CV117-HEH, 2020 WL 855965, at *6-7 (E.D. Va. Feb. 20, 2020) ("A prisoner does not have a constitutionally guaranteed immunity from being falsely accused" of a disciplinary charge (citations omitted)). Count VII should be dismissed.

### IV. Plaintiff's *Monell* Claims Against Superintendent Meletis Should Be Dismissed.

Throughout the Complaint, Plaintiff references his *Monell* claim against Superintendent Meletis under numerous theories. Plaintiff's *Monell* claims can be summarized as follows:

- In Count I, Plaintiff alleges that Superintendent Meletis, in his official capacity, maintains "policies, practices, acts, and/or omissions [which] constitute and reflect deliberate indifference to the serious medical and health care needs of the Plaintiff." Am. Compl. ¶ 130.

- In Count VI, Plaintiff alleges a *Monell* claim based on "informal but widespread customs and practices" evidenced by: "the cover-up of beatings" described in the Amended Complaint; "decisions made by Superintendent Meletis, as well as other members of the Jail Board, to "summarily deny any and all complaints made by Mustafa"; the failure to train employees; the continuous retaliation against Mustafa for filing grievances both internal and external; the differential treatment of Mustafa; . . . the constant ratification of the violent treatment of prisoners; as well as the Superintendent's failure to adequately supervise Jail employees such as [the named correctional officer defendants]." Am. Compl. ¶¶ 190-91.

- In Count VII, Plaintiff alleges that the correctional officer defendants alleged excessive force was due to "Defendants' unwritten policies, practices, customs, acts and/or omissions, [which] constitute and reflect deliberate indifference to the life of the Plaintiff." Am. Compl. ¶ 206.

- In Count VIII, Plaintiff alleges that the correctional officer defendants decision to place the Plaintiff in "solitary confinement for minor infractions . . . resulted from an unwritten policy or custom of the [ADC], which was overseen by [Superintendent Meletis], the Jail Board, and its Jail Members." Am. Compl. ¶¶ 213, 218.

"For purposes of Section 1983, a municipality is considered a 'person' and thus is subject to suit." *Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978)). "Although an underlying constitutional violation is a necessary element of municipal liability, it is not sufficient: a municipality cannot 'be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Jackson v. Town of Farmville*, No. 3:22cv729, 2023 WL 3871697, at *4 (E.D. Va. June 7, 2023) (quoting *Hunter*, 897 F.3d at 553-54)). Liability will arise "when execution of a government's policy or custom, whether made by its lawmakers

or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Hunter*, 897 F.3d at 554.

The Fourth Circuit has identified four avenues through which a § 1983 plaintiff may demonstrate municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens[;"] or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

It appears from the face of the Amended Complaint that Plaintiff purports to establish *Monell* liability against Superintendent Meletis under the second, third, and fourth categories—through "decisions made by [Superintendent Meletis]," Am. Compl. ¶ 190; through an alleged "failure to train" correctional officers, *id.* ¶¶ 121, 190, and "unwritten policies, practices, customs, acts and/or omissions, [which] constitute and reflect deliberate indifference to the life of the Plaintiff," *id.* ¶¶ 213, 218.

### A. Plaintiff's Monell Claim Should Be Dismissed Because the Amended Complaint Fails to State a Claim of an Underlying Constitutional Violation.

Plaintiff's Monell claims against Defendants should be dismissed for the simple reason that the Amended Complaint fails to plead facts to support an underlying constitutional violation. *Balogh,* 2024 WL 4551724, at *9 ("[A *Monell* claim] requires an underlying constitutional violation. . . . As we've already found, [the plaintiff] hasn't articulated one."). Accordingly, dismissal of Plaintiff's *Monell* claims is appropriate on this basis alone.

However, even if the Court finds that Plaintiff has plausibly pled that he has suffered a constitutional violation, the Court should still dismiss the *Monell* claims advanced under ratification, failure to train, and "persistent and widespread" policy or custom theories.

**B. The Complaint Lacks Facts to Support a Claim that Superintendent Meletis Ratified the Actions of Any Subordinate Officers.**

"Although municipal liability under Section 1983 attaches only to 'action [taken] pursuant to official municipal policy of some nature, . . . it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.'" *Hunter,* 897 F.3d at 554 (quoting *Pembaur*, 475 U.S. at 477, 480). "When a final policymaker 'has the authority to review the decision of a subordinate, its approval of that allegedly unconstitutional decision can also give rise to liability under Section 1983.'" *Jackson,* 2023 WL 3871697, at * 6 (quoting *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022)). "[R]atification liability does not hold a municipality liable for the actions of subordinate officials; rather it holds the municipality liable for its <u>own decision</u> to uphold the actions of subordinates." *Starbuck*, 28 F.4th at 534 (emphasis added). Under the ratification theory of liability, the final decisionmaker's ratification of a subordinate's decision must still cause the alleged constitutional injury. *Id.*; *Jackson*, 2023 WL 3871697, at *7 (dismissing *Monell* claim predicated on ratification decision because the complaint failed to plausibly allege that the decision caused a constitutional violation that the plaintiff allegedly suffered).

In this case, Plaintiff appears to advance a claim that Superintendent Meletis decided to "summarily deny any and all complaints made by [Plaintiff]" and ratify "the violent treatment of prisoners." Am. Compl. ¶ 191. Plaintiff's claim must be dismissed for two reasons. First, as set forth herein, the denial of a grievance does not support a constitutional injury. *Martin v. O'Brien,* No. 6:13-335-TMC-JDA, 2013 WL 1282143, at *3 (D.S.C. Feb. 21, 2013), *report and*

*recommendation adopted by* 2013 WL 1281952 (D.S.C. Mar. 26, 2013). Additionally, Plaintiff's medical records demonstrate that he was afforded routine medical care by ADC medical staff and ADC medical staff found absolutely no evidence that Plaintiff suffered any violence by correctional officer staff. *See infra,* Section III. Plaintiff's *Monell* claim based on a theory that he was subjected to violence by staff and his complaints were "summarily denied" fails on this basis alone.

Second, even crediting Plaintiff's allegation that Superintendent Meletis denied his "complaints and grievances" related to his conditions of confinement, such allegations cannot support a claim that Superintendent Meletis ratified the alleged conduct of his subordinates. In *Jackson*, the court dismissed a *Monell* claim based on the theory that a final policymaker ratified a police officer's actions by deciding not to discipline him for alleged excessive force. 2023 WL 6781697, at *2, *5. In that case, the plaintiff alleged that the officer used excessive force in detaining the plaintiff during a traffic stop. *Id.* *2. In dismissing the claim against an unspecified final policymaker of the Town of Farmville, the court held that "even if [the plaintiff] had identified a final policymaking authority that had decided not to discipline [the defendant police officer], the decision of that individual or entity could not undo the constitutional violation he allegedly suffered from [the officer's] excessive use of force." *Id.* at *7.

Similarly, here, Plaintiff's ratification theory against Superintendent Meletis rests on the theory that he filed grievances, which were denied, and that in October and November 2023, Superintendent Meletis spoke with Plaintiff and Plaintiff's family members regarding alleged past events at the ADC. Am. Comp. ¶¶ 100-03. The facts alleged in the Complaint do not sufficiently allege facts to support a claim that Superintendent Meletis' ratification of a subordinate's decision "*cause[d]* the alleged constitutional injury" related to the alleged May 2023 assault. *Jackson*, 2023

WL 3871697, at *6 (emphasis in *Jackson*); *see also Franklin v. City of Charlotte,* 64 F.4th 519, 537 (4th Cir. 2023) (finding that a city manager's decision that an officer acted in conformity with the department's use-of-force policy did not constitute ratification for *Monell* liability because the "post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation").

The *Monell* claim asserted in Count VI based on a ratification theory must be dismissed.

### C. The Complaint Lacks Facts that Support a "Failure to Train" *Monell* Claim.

Plaintiff's "failure to train" *Monell* claim must also be dismissed because the Complaint lacks any specific facts pertaining to the adequacy of the ADC's training program and Plaintiff's bald allegations that the ADC trains officers to beat inmates, hold them in solitary confinement, and deny them medical care, *see* Am. Compl. ¶ 44, is simply not plausible.

"A municipality's failure to train may support § 1983 liability where the failure amounts to deliberate indifference to the rights of persons with whom the [official] come into contact and is the 'moving force behind the constitutional violation.'" *Jackson,* 2023 WL 3871697, at *8 (quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (1989) (internal citations omitted)). Importantly, this requires a "'deliberate' or 'conscious' choice by a municipality." *City of Canton*, 489 U.S. at 389. "The most common way to plead a failure to train claim is to allege 'a pattern of similar constitutional violations by untrained employees.'" *Lee v. City of Richmond*, No. 3:12cv471, 2013 WL 1155590, at * 7 (E.D. Va. Mar. 19, 2013) (quoting *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 842 (E.D. Va. 2011)). To that end, a plaintiff must allege "facts to render 'plausible' a claim that this violation was either part of a 'pattern of unconstitutional conduct' by [municipal] employees or that the 'violation of a federal right [was] a highly predictable

consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Id.* (quoting *Hill v. Robeson Cnty.*, 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010)).

"A plaintiff seeking to bring a failure to train claim 'need not identify in detail the exact training policies in effect, or lack thereof, at the time of the events in question.'" *Green v. Mills*, No. 3:19cv906, 2020 WL 2850177, at *10 (E.D. Va. June 2, 2020) (quoting *Lee,* 2013 WL 1155590, at * 7). But a plaintiff cannot properly support a failure to train claim "by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the [municipality] is responsible." *City of Canton*, 489 U.S. at 389. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury[ ] causing conduct." *Id.* at 391. Last, the deficiency in a training program "must be closely related to the ultimate injury." *Id.*

Here, Plaintiff has not pled sufficient plausible facts to support a failure to train claim. Plaintiff fails to allege any specific factual allegations regarding the adequacy of the training that any of the correctional officers, including any of the named correctional officer defendants, received. In fact, Plaintiff's allegations related to correctional officer training is simply not plausible. In paragraph 44 of the Amended Complaint, Plaintiff alleges that the ADC follows a "protocol" whereby "inmates are beaten further to intimidate them from speaking, held in solitary confinement, denied medical [care], and often not booked officially until their major injuries are cleared." Am. Compl. ¶ 44. There are simply no plausible facts to support an inference that the ADC maintains an "official protocol" such as this. Thus, Count VI premised on a "failure to train" theory must be dismissed.

**D. The Complaint Lacks Facts that the ADC or Superintendent Meletis, in his Official Capacity, Implemented a Policy or Custom So "Persistent and Widespread" to Constitute a "Custom or Usage with the Force of Law."**

Outside of the formal decision-making channels set forth *infra,* "a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691)). Courts have cautioned plaintiffs that "no municipality can 'be held liable under § 1983 on a *respondeat superior* theory.'" *Carter*, 164 F.3d at 218 (citing *Monell*, 436 U.S. at 691)). "A plaintiff's theory is most likely to slip into that forbidden realm when she alleges municipal omission—either a policy of deliberate indifference or the condonation of an unconstitutional custom." *Id.* (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405. "[S]cattershot allegations of 'past generalized bad [municipal] behavior' causing 'future generalized bad [municipal] behavior' are insufficient to establish causation." *Washington v. Housing Auth. of the City of Columbia,* 58 F.4th 170, 182 (4th Cir. 2023) (quoting *Carter,* 164 F.3d at 218-19). Therefore, to state a *Monell* claim based on condonation, a plaintiff must "point to a 'persistent and widespread practice of municipal officials', the 'duration and frequency' of which indicate that policymakers (1) had actual and constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Balt. City State's Atty's Office*, 767 F.3d 379, 402 (4th Cir. 2014).

Plaintiff lists a number of inmates who have been subjected to "[the ADC's] use of force and/or denial of medical treatment by [the ADC] employees." Am. Compl. ¶¶ 123-24. However,

Plaintiff cannot support a *Monell* claim based on these "scattershot" allegations, because Plaintiff's allegations cannot meet the "rigorous" causation standard required by *Monell. Carter*, 164 F.3d at 218. As set forth above, Plaintiff has failed to allege facts to support a plausible claim that he was subject to any excessive force or denial of medical care by the ADC.

Moreover, the examples that Plaintiff lists in paragraphs 123 and 124 in the Amended Complaint do not bear any resemblance to his implausible factual allegations. For example, Plaintiff alleges that Mr. Rodney Ward was denied medical treatment for his medical health condition; whereas Plaintiff does not allege that he has requested and was denied mental health treatment. *See* Am. Compl. ¶ 124(d). Additionally, Plaintiff's allegations related to Mr. Emmanuel Boateng appear to imply that Prince William Police Department—not ADC correctional officers—subjected Mr. Boateng to excessive force. *Id.* ¶ 124(c). Moreover, there are simply no plausible allegations to support an inference that other individuals were subjected to any treatment that could possibly be causally related to an ADC policy. *See, e.g.*, Am. Compl. ¶¶ 123(a), (b), (c), (e), (f). Plaintiff's allegations, attributing every alleged incident of an inmate passing away or subject to any force at the ADC to an "unwritten policy or practice," are insufficient to state a claim as a matter of law.

In sum, Plaintiff's *Monell* claim must be dismissed because the allegations that he was assaulted by correctional officers and denied medical treatment must be disregarded because his medical records and the ADC incident reports attached to the Complaint bely his claims. Without plausible allegations of an underlying constitutional violation, Plaintiff's *Monell* claims fail as a matter of law.

## CONCLUSION

The Court should grant Defendants' Motion and dismiss this action against the Prince William-Manassas Regional Adult Detention Center and Colonel Peter A. Meletis, in his individual capacity and official capacity as Superintendent of the Prince William-Manassas Regional Adult Detention Center.

Respectfully submitted,

COLONEL PETER A. MELETIS, and
PRINCE WILLIAM-MANASSAS REGIONAL
ADULT DETENTION CENTER

By: /s/

William W. Tunner (VSB No. 38358)
Paulo E. Franco (VSB No. 30298)
Rachel W. Adams (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
pfranco@t-mlaw.com
radams@t-mlaw.com

*Counsel for Defendants Colonel Peter A. Meletis and Prince William-Manassas Regional Adult Detention Center*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of November, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Elaine Jarvis, Esq.
Jarvis Law PLLC
128 N. Royal Avenue
Front Royal, VA 22630
elaine@jarvislaw.org

*Counsel for Plaintiff*

Rosalie Pemberton Fessier, Esq.
Brittany Elizabeth Shipley, Esq.
TimberlakeSmith
25 North Central Avenue
P.O. Box 108
Staunton, VA 24402-0108
rfessier@timberlakesmith.com
bshipley@timberlakesmith.com

*Counsel for Defendants Prince William-Manassas Regional Jail Board, Hill, Ashworth*

Alexander Francuzenko, Esq.
Thea Alicia Paolini, Esq.
Cook Craig & Francuzenko PLLC
3050 Chain Bridge Road
Suite 200
Fairfax, VA 22030
alex@cookcraig.com
tpaolini@cookcraig.com

*Counsel for Defendants Hurlock, Powell, Kepler, Feder, Daniels, Waleisky, Suda, Darling, Gordon, Foster, Willi, Booker, Nordike, Tipton, Canas, and Hargrove*

Martin Conn, Esq.
Taylor Denslow Brewer, Esq.
Rebecca Roberts, Esq.
Moran Reeves Conn PC
1211 E. Cary Street
Richmond, VA 23219
mconn@moranreevesconn.com
tbrewer@moranreevesconn.com
rroberts@moranreevesconn.com

*Counsel to Defendant Alvarado-Gomez, Gurbutwal, Liagouris, and Musngi*

By: /s/ ____________________________
Rachel W. Adams (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
radams@t-mlaw.com

*Counsel for Defendants Colonel Peter A. Meletis and Prince William-Manassas Regional Adult Detention Center*